**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JERRY LAMAR WHITLOCK, # 04182**                    **PETITIONER**

**V.**                                   **CASE NO. 3:12cv186-TSL-JCG**

**RONALD KING**                                    **RESPONDENT**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner Jerry Lamar Whitlock filed this petition for writ of *habeas corpus* under 28 U.S.C. § 2254 on March 19, 2012. [1]. Respondent Ronald King filed an answer on June 4, 2012. [11]. Whitlock filed a traverse on July 10, 2012. [16]. Having reviewed the facts and applicable law, the undersigned issues this report and recommendation that the petition be dismissed.

<u>**Facts**</u>

Jerry Lamar Whitlock was indicted in the Circuit Court of Rankin County, Mississippi on one count of attempted automobile burglary on October 20, 2005. [12-1, p.21]. After two mistrials, Whitlock was convicted by a jury on May 21, 2009. [12-2, p.126]. On July 7, 2009, Whitlock was sentenced to life without parole as an habitual offender under Mississippi Code § 99-19-83. [12-2, p.133].

On September 16, 2010, the Mississippi Supreme Court affirmed Whitlock's conviction and sentence and recounted the facts that led to his underlying arrest:

> On August 5, 2005, Dottie Smith went to BankPlus in Flowood to obtain coin change for operating her business over the weekend. As she exited the bank, Smith noticed that another vehicle was backed into the parking spot beside her vehicle. Smith testified that she "thought it was kind of strange because all the other parking places were empty and they were backed in there next to me." Smith proceeded to her car, unlocked the doors by remote, and placed her change bags on the back seat. According to Smith, as she closed the back passenger door, she heard the driver's door of the other vehicle open. Smith also found this strange. She locked all the doors of her vehicle with the remote.

Smith testified that as she shut the door, she looked up and saw a man standing there, looking as if he was going into the bank. They were between the two vehicles. According to Smith, before she had the chance to unlock her door to enter her vehicle, the man placed his hand on her rear passenger door handle and pulled it. While the man attempted to open her door, Smith ran to the back of the man's vehicle. Realizing the door was locked, the man then yelled at her to unlock the door, and she replied "no." Smith pushed the panic button on her remote which caused her car horn to blow. The man then got back into his car and sped away. Since Smith was standing behind the man's vehicle, she was able to obtain his tag number. She immediately ran into the bank, grabbed a deposit slip, and wrote the tag number on it. As Smith was writing the tag number, she yelled that someone had just tried to rob her. She gave the deposit slip with the tag number written on it to a bank employee who called 911. [FN1]

> [FN1] For the benefit of aiding law enforcement officials in locating and apprehending the perpetrator, Smith described the suspect as a black male wearing a white tank top and dark shorts.

State Trooper Wayne Dearman was monitoring his radio systems at the time of the incident, and he received information that "[t]wo black males, attempted robbery at BankPlus." He also received a vehicle description and the tag number. While Trooper Dearman was writing the information on a notepad, the vehicle that was described passed him, and he was able to see part of the license plate. Trooper Dearman then initiated a traffic stop, and the vehicle turned into a driveway, where he pulled behind it. The driver exited the vehicle, so Trooper Dearman ordered him to the ground. The passenger acted as if he was exiting the vehicle to also get on the ground; however, according to Trooper Dearman, the man kicked off his flip-flops and ran. When Dearman attempted to get his radio, the other suspect also fled. Trooper Dearman was able to identify the clothing of both suspects. [FN2]

> [FN2] Trooper Dearman stated the passenger was wearing a white tank top and blue shorts, and the driver was wearing a white tee shirt and Hawaiian, or flower design, shorts.

Officer Sentel Easterling of the Pearl Police Department heard Trooper Dearman on the radio requesting assistance, so he proceeded to the area. He observed a black male wearing the clothes Trooper Dearman had described attempting to gain entrance to a residence. Officer Easterling apprehended the man and handed him over to a Flowood police officer. The man was wearing a white tank top and dark colored shorts and was identified as Jerry Lamar Whitlock. [FN3] Before being taken to the Flowood Police Department, Whitlock was taken to a mini storage facility where

the complainant, Smith, positively identified him as the man who had attempted to break into her car.

> FN3 Later, the other suspect also was apprehended and identified.
> 
> \*        \*        \*

*Whitlock v. State,* 47 So.3d 668, 670-71 (Miss. 2010).

A petition for rehearing in the Mississippi Supreme Court was denied on December 2, 2010. [12-10, p.6]. A petition for writ of certiorari in the United States Supreme Court was denied on April 25, 2011. *Whitlock v. Mississippi*, 131 S.Ct. 2158 (2011). On March 6, 2012, the Mississippi Supreme Court entered the following order denying Whitlock's *pro se* application for post-conviction relief:

> The panel finds that several of Whitlock's claims could have been raised at trial and on direct appeal and are therefore barred in post-conviction proceedings. Miss. Code Ann. § 99-39-7. The panel finds that Whitlock's claims of ineffective assistance of counsel fail to meet the standard set out in *Strickland v. Washington* and are without merit. After due consideration, the panel finds that the petition should be denied.

[12-11, p.2].

Whitlock filed this *pro so* petition on March 19, 2012. [1]. The petition asserts ten (10) grounds for federal *habeas corpus* relief under 28 U.S.C. § 2254. *Id*.

## <u>Analysis</u>

### I.    Grounds One, Two, and Three should be denied under § 2254(d).

Respondent correctly argues that Grounds One, Two, and Three should be denied pursuant to 28 U.S.C. § 2254(d) because these grounds were adjudicated on the merits by the Mississippi Supreme Court and the state court decision was not an unreasonable application of clearly established federal law. [11, ¶6]. Section 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Pure questions of law are reviewed under the "contrary to" standard set forth in § 2254(d)(1).[1] "A state court's decision is 'contrary to' clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014).

Mixed questions of law and fact are reviewed under the "unreasonable application" standard set forth in § 2254(d)(1). The "unreasonable application" standard focuses on "the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."[2] "A state court's decision involves an 'unreasonable application' of clearly established federal law if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. "The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under §

---

[1] *Simmons v. Epps*, 654 F.3d 526, 534 (5th Cir. 2011) ("We review pure questions of law under the 'contrary to' standard of sub-section (d)(1), mixed questions of law and fact under the 'unreasonable application' standard of sub-section (d)(1), and pure questions of fact under the 'unreasonable determination of facts' standard of sub-section (d)(2).").

[2] *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014) ("In reviewing a state court's decision under the 'unreasonable application' prong, we focus on 'the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence.'").

2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance." *Id*.

Pure questions of fact are reviewed under the "unreasonable determination of facts" standard set forth in § 2254(d)(2). "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*. Moreover, "a state court's factual determination is 'not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Hoffman*, 752 F.3d at 437.

Ground One   The identification process was so impermissibly suggestive that Whitlock suffered irreparable misidentification.

This issue is reviewed under the "unreasonable application" standard of § 2254(d)(1) because it involves a mixed question of law and fact and it was "adjudicated on the merits" by the Mississippi Supreme Court:

> Whitlock asserts that the identification procedures performed by the police department were unfairly suggestive, and thus, all identification stemming from the show-up procedure should have been inadmissible at trial, including Smith's in-court identification of him before the jury.
>
> \*          \*          \*
>
> In today's case, according to Smith's trial testimony, she was standing close to Whitlock at the time of the incident and for a while she did not take her eyes off of him. She stated they were only inches apart, she had nothing obstructing her view, and Whitlock had nothing obstructing his face. Smith got a good look at Whitlock and stated that he was wearing a white tank top and dark shorts. At the time of his arrest, Whitlock was wearing a white tank top and blue shorts. Smith was also a hundred percent sure that she did not confuse the two suspects, Whitlock and the other occupant of the vehicle. Smith testified that when she identified Whitlock at the storage facility, only about an hour after the incident, there was no doubt in her mind that he was, in fact, the man who had attempted to rob her.
>
> \*          \*          \*

When analyzing the *Biggers* factors, this Court cannot say, based on the
circumstances surrounding the incident and show-up procedure, that "the conduct
gave rise to a very substantial likelihood of irreparable misidentification." Thus, in
today's case, we find no abuse of discretion in the trial court's admission of this
identification evidence. This issue is without merit.[3]

The Supreme Court's decision in *Neil v. Biggers* set forth the "clearly established"
federal law for determining the constitutionality of an out-of-court identification procedure.[4]
The state court applied the *Biggers* factors to the facts of the case and the evidence
introduced at trial. The state court decision was not an "unreasonable application" of the
clearly established federal law in this regard.[5] Whitlock's request for federal *habeas corpus*
relief on this ground should be denied pursuant to 28 U.S.C. § 2254(d)(1).

Ground Two      Whitlock's sentence of life imprisonment without parole as an
habitual offender for attempted automobile burglary is
disproportionate to the crime and constitutes cruel and unusual
punishment.

This issue is also reviewed under the "unreasonable application" standard of §
2254(d)(1) because it involves a mixed question of law and fact and it was "adjudicated on
the merits" by the Mississippi Supreme Court:

Whitlock argues that a sentence of life imprisonment without parole as an habitual
offender for attempted automobile burglary is disproportionate to the crime and

---

[3] *Whitlock v. State*, 47 So. 3d 668, 672-73 (Miss. 2010).

[4] *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382 (1972) ("We turn, then, to the central question,
whether under the 'totality of the circumstances' the identification was reliable even though the confrontation
procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of
misidentification include the opportunity of the witness to view the criminal at the time of the crime, the
witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty
demonstrated by the witness at the confrontation, and the length of time between the crime and the
confrontation.").

[5] *Scott v. Michael*, 488 Fed.Appx. 887, 889-90 (5th Cir. 2012) ("Roe was unequivocal in her testimony that Scott
was the perpetrator, and the time between the crime and the confrontation was very short. Although the
suggestive identification itself may weigh in Scott's favor, based on the totality of the circumstances, the
likelihood of misidentification at trial was low.")

constitutes cruel and unusual punishment. The trial court sentenced Whitlock as an habitual offender pursuant to Mississippi Code Section 99-19-83, which states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
>
> *       *       *

Whitlock was sentenced to and served terms of one year or more in a state penal institution on each of these felony convictions, and at least one of these felonies was a crime of violence. In fact, Whitlock's prior convictions involved at least three crimes of violence-rape, aggravated assault and robbery. Thus, it is clear that Whitlock met the criteria to be sentenced as an habitual offender to life imprisonment without parole under Section 99-19-83.[6]

This issue involves competing principles of "clearly established" federal law. On one hand, the Supreme Court holds that the "gross disproportionality" principle is reserved for "only the extraordinary case."[7] On the other hand, the Court also grants broad discretion to a state legislature in determining the length of a prison sentence under a recidivist statute like Mississippi Code § 99-19-83:

> The purpose of a recidivist statute such as that involved here is not to simplify the task of prosecutors, judges, or juries. Its primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a

---

[6] *Whitlock v. State*, 47 So. 3d 668, 674-75 (Miss. 2010).

[7] *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction. We therefore hold that the mandatory life sentence imposed upon this petitioner does not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments.[8]

The state court's decision in this case is not an "unreasonable application" of clearly established federal law because the Supreme Court has upheld life-long prison sentences for less egregious felony convictions than Whitlock's unrefuted prior convictions for rape, aggravated assault, and robbery.[9] This ground should therefore be denied under 28 U.S.C. § 2254(d)(1).

Ground Three   The trial court erred in denying Whitlock's motion for new trial because the verdict was against the overwhelming weight of the evidence.

This issue should be reviewed under the "unreasonable application" standard of § 2254(d)(1) because it involves a mixed question of law and fact and it was "adjudicated on the merits" in the state court proceedings:

In Whitlock's final assignment of error, he asserts that the trial court erred in denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence.

Whitlock contends that a new trial is warranted because Smith stated that the driver of the vehicle had attempted to rob her, but when Trooper Dearman pulled the vehicle over, Whitlock was the passenger. According to Whitlock, this testimony is conflicting; however, we must compare Smith's testimony to the testimony of Investigator Jerry McCue of the Flowood Police Department. Investigator McCue testified that it came to law enforcement's attention through the other occupant of the vehicle that the suspects had made a stop prior to being pulled over by Trooper

---

[8] *Rummel v. Estelle* 445 U.S. 263, 284-85 100 S.Ct. 1133, 1144-45 (1980).

[9] *Id.* (Mandatory life sentence imposed under Texas recidivist statute following defendant's third felony conviction for obtaining $120.75 by false pretenses did not constitute "cruel and unusual punishment" where defendant was previously convicted and sentenced to prison for felonies of fraudulent use of credit card to obtain $80 worth of goods or services and passing a forged check in the amount of $28.36.).

Dearman. Reasonable jurors logically could infer that the two occupants of the vehicle had swapped positions during this stop.

Whitlock also argues that due to the weather, Smith's perception of the individual she saw at the bank could have been inaccurate. However, "the jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." In today's case, Smith provided substantial and believable testimony that Whitlock was indeed the man who had attempted to burglarize her vehicle. She asserted that she had gotten a good look at him with nothing obstructing her view, and she testified to being a hundred percent sure that she did not confuse the two suspects.

Whitlock further asserts that no scientific evidence was admitted showing Whitlock was the person who attempted to rob Smith. This Court, however, has found that "'the testimony of a single uncorroborated witness is sufficient to sustain a conviction.'" … The record before this Court contains substantial and believable evidence that Whitlock committed the crime of attempted automobile burglary, and the trial court did not abuse its discretion in failing to grant a new trial. This issue is without merit.[10]

The "clearly established" federal law is the sufficiency of the evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). The Supreme Court has since held that "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* "And a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was 'objectively unreasonable.'" *Id.*

Here, the case was submitted to the jury with the burden assigned to the state and the jury found that the state had carried its burden. The Mississippi Supreme Court found

---

[10] *Whitlock v. State*, 47 So. 3d 668, 675-76 (Miss. 2010) (internal citations omitted).

the evidence adequate to sustain Whitlock's conviction. The state court's decision is not "objectively unreasonable" under § 2254(d)(1).

Significantly, Whitlock's insufficiency argument rests on a misunderstanding of Mississippi criminal law.  Throughout the petition (including claims for ineffective assistance of counsel in Grounds Nine and Ten), Whitlock argues that the prosecution had to prove "beyond a reasonable doubt" that it was Whitlock – and not co-defendant Gregory Trigg – who touched the "victim's car handle" to sustain a valid conviction for attempted automobile burglary under Mississippi law.

The Fifth Circuit has recently explained the fundamental flaw in Whitlock's argument:

> Under Mississippi law, "one who aids and abets another in the commission of an offense is guilty as a principal." *King v. State*, 857 So.2d 702, 739 (Miss.2003). To convict Hughes of aiding and abetting the crimes of aggravated assault and armed robbery, the prosecution was required to prove that the crimes were committed and that Hughes "was present, consenting, aiding, and abetting" in the commission of the crimes. *Lynch v. State*, 877 So.2d 1254, 1279 (Miss.2004) (citation and internal quotation marks omitted).

> Hughes does not contend that the evidence was insufficient to prove that Webster committed the crimes of armed robbery and aggravated assault. He argues only that evidence was insufficient to prove that he had the intent to aid and abet the commission of the crimes and that he took actions in aid of these crimes.

> *       *       *

> Considering the evidence in this case, the Mississippi Supreme Court held that Warner's testimony that Hughes and Webster together turned around and walked away before the shooting began supported a finding that "Hughes knew what was about to transpire." *Hughes*, 983 So.2d at 277. The court also held that Webster's statement after the crime regarding a "lick" would allow a juror to "reasonably infer that a 'lick' or robbery had been their mutual intent beforehand." *Id*. Moreover, the Mississippi Supreme Court thoroughly explained how a finding of a mutual intent to commit robbery was supported by the totality of the circumstances, including that the two discussed the subject of robbery beforehand, parked for a while in a neighbor's driveway, and both walked together 150 to 200 yards to the Warners' home to tell a false story about running out of gas.

Likewise, the Mississippi Supreme Court considered Hughes's argument that he was merely present and did not aid in the commission of the crimes. It explained that, under Mississippi law, "[m]ere presence, even with the intent of assisting in the crime, is insufficient unless the intention to assist was in some way communicated to [the principal]." *Id.* at 276–77 (emphasis added) (citation and internal quotation marks omitted). The court distinguished the cases cited by Hughes and held that the evidence in his case was sufficient to show that he aided and abetted the commission of the crimes by being present and communicating his intent to aid Webster by (1) accompanying him the 150 to 200 yards to the Warners' house after the two discussed robbery, and (2) "acting, along with Webster, as if he were leaving just before Webster began shooting."

As the Mississippi Supreme Court recognized, there was evidence presented at Hughes's trial as to both his intent and his actions in aid of Webster's commission of armed robbery and aggravated assault. The court's factual findings were not unreasonable in light of this evidence, especially given the rebuttable presumption that applies. Nor can we say that the court unreasonably applied the United States Supreme Court's sufficiency of the evidence standard as established in *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

*Hughes v. Epps*, 561 Fed.Appx. 350 (5th Cir. 2014).

In other words, confidence in Whitlock's state court conviction is not undermined by his evidentiary arguments in this petition. Even if it was co-defendant Trigg who actually touched the victim's car handle (as Whitlock contends), ample evidence was offered at trial to convict Whitlock as an accomplice under the controlling state law.[11] This conclusion is reinforced by the instruction (Number Six) given to the jury that convicted Whitlock:

The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of another person or persons in a joint effort or enterprise.

---

[11] *Hughes v. Epps*, 561 Fed.Appx. 350 at n. 3 (5th Cir. 2014) ("State law determines the substantive elements of a crime, while federal law determines federal constitutional sufficiency of the evidence. To the extent that there is disagreement about the parameters of applicable Mississippi aiding and abetting law, we note that federal habeas corpus relief does not lie for errors of state law. It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (internal citations and quotations omitted).

If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons and that the defendant voluntarily participated in its commission with the intent to violate the law.

[12-2, p.112].

The state court's factual findings were not unreasonable in light of the evidence presented at trial. Nor was the state court's decision an "unreasonable application" of the "clearly established" federal law. This ground should therefore be denied pursuant to 28 U.S.C. § 2254(d)(1).

## II.     Grounds Four, Five, Six, Seven, and Eight should be denied pursuant to § 2254(b).

Respondent also correctly contends that Grounds Four, Five, Six, Seven, and Eight should be dismissed because each ground is procedurally barred from federal *habeas corpus* review under 28 U.S.C. § 2254(b). [11, ¶5]. Section 2254(b) states in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that --

(A)   the applicant has exhausted the remedies available in the courts of the State; or

(B)  (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

*     *     *

A "procedural default" can occur if a claim is not "fairly presented" in the state court proceedings.[12] "A claim is 'fairly presented' to the state courts if there has been, for example, (1) reliance on pertinent federal cases employing relevant constitutional analysis; (2) assertion of the claim in terms sufficiently particular as to call to mind a specific right protected by the Constitution; or (3) allegations of a pattern of facts that is well within the mainstream of constitutional litigation." *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004) (internal citations omitted). "Vague or fleeting references to principles of constitutional law are not enough, nor will the fact that the petitioner made a somewhat similar state law claim suffice." *Canales v. Stephens*, 765 F.3d 551, 578 (5th Cir. 2014) (internal citations omitted).

A "procedural default" can also occur if the claim was presented to the highest available state court and was dismissed on a state-law procedural grounds rather than being decided on the merits.[13] The state procedural grounds for dismissal, however, must be "independent and adequate."[14] "To satisfy the 'independent' and 'adequate' requirements,

---

[12] *Jackson v. Epps*, 447 Fed.Appx. 535, 540 (5th Cir. 2011) ("There are two ways that a habeas claim can be procedurally defaulted. First, if the prisoner has never fairly presented that claim to the highest available state court, the claim is unexhausted. Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state-law procedural ground instead of deciding it on the merits," the claim is procedurally defaulted.").

[13] *Jackson v. Epps*, 447 Fed.Appx. 535, 540 (5th Cir. 2011).

[14] *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court when: (1) a state court has declined to address those claims because the prisoner

the state court's dismissal must clearly and expressly reflect that it rests on a state procedural bar, and the bar must be strictly or regularly applied by state courts to the vast majority of similar claims." *Rogers v. Mississippi*, 555 Fed.Appx. 407, 408 (5th Cir. 2014). "Where a state court asserts a procedural bar, we presume that obstacle is 'adequate and independent,' but the petitioner can overcome that presumption by showing that state courts do not strictly or regularly follow the rule." *Paredes v. Quarterman*, 574 F.3d 281, 289 (5th Cir. 2009).

A petitioner may be excused from a "procedural default" upon a showing of "cause for the default and prejudice from a violation of federal law."[15] "In order to demonstrate cause, the habeas petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court.'" *Id*. (citation and internal quotation marks omitted). "Examples of these objective factors include 'interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Id*. "The question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." *Id*. "Once cause has been established, the habeas petitioner must then show 'actual prejudice.' This means the petitioner must prove that the errors 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id*.

A petitioner may also be excused from a "procedural default" if the state court bar would result in a "fundamental miscarriage of justice." *Reed v. Stephens*, 739 F.3d 753, 767

---

had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.").

[15] *Canales v. Stephens*, 765 F.3d 551 (5th Cir. 2014) ("A federal court may consider the merits of a procedurally defaulted claim if the petitioner shows 'cause for the default and prejudice from a violation of federal law.'")

(5th Cir. 2014). "A petitioner makes such a showing where he establishes that he is 'actually innocent' of the offense for which he was convicted." *Id*. "To do so, a petitioner must 'establish through new and reliable evidence that it was more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id*. "This evidence may include 'exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence.'" *Id*. "The actual-innocence standard 'does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.'" *Id*. "Put differently, 'a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*.

Here, Whitlock agrees that each of the following issues was held to be procedurally barred by the Mississippi Supreme Court in his initial post-conviction proceeding:

Ground Four — Whitlock was denied his Sixth Amendment right to a fast and speedy trial, a right which is imposed on states by the due process clause of the Fourteenth Amendment.

Ground Five — Whitlock was denied due process of law, and Fourteenth Amendment right to a fair trial where the trial judge was biased.

Ground Six — Whitlock was denied his Fifth, Sixth and Fourteenth Amendment right to a fair trial due to the prosecutor engaging in misconduct.

Ground Seven — Whitlock was denied his rights secured through the Sixth Amendment's confrontation clause, this right extends to state prosecutions through the due process clause of the Fourteenth Amendment.

Ground Eight — Whitlock was denied due process, the Sixth Amendment, and equal protection principles where the jury venire did not reflect a fair cross section of the community.

Whitlock does not dispute that the state procedural bar was "adequate and independent" in this case. Instead, Whitlock argues that the "procedural default" should be excused due to his allegations of ineffective counsel at trial (Aafram Y. Sellers) and on direct appeal (Benjamin A. Suber):

> The state court erroneously ruled the issues raised in post conviction were procedurally barred. The post conviction issues were framed under ineffective assistance of appellate counsel. Appellate counsel failed to raise this issue [Ground Four], as well as issues 5, 6, 7, 8, 9, and 10, which will be labeled and argued herein as was done *pro se* in post conviction. See Grounds 5-10, attached pages 1-3.
>
> \*     \*     \*
>
> The sole and main issue surrounding all three trials is whether it was Whitlock or Trigg who exited the driver's side of the suspect's vehicle and touched the victim's car handle. Trooper Dearman testified that within minutes of the attempted burglary he pulled the vehicle over and Trigg was the person whom exited the driver's side of the suspect's vehicle, the exact place the victim stated the man who grabbed her door handle returned after the incident.
>
> There is testimonial evidence that Trigg and Whitlock both had on dark (blue) colored shorts and a white tee shirt when the incident took place, the description the victim gave police, being two men exited the suspect car and only one of the two men touched the victim's car handle, for purposes of identification, identification shall [sic] have been postponed until both suspects were in custody where the victim could have viewed both suspects at the same time and been able to fairly determine which of the two men was thee one whom got out of the driver's seat and touched the door handle.

[1, p.10; 17].

Whitlock fails to show "new and reliable evidence" such that no reasonable juror would have found him guilty as an accomplice for attempted automobile burglary beyond a reasonable doubt. Whitlock also fails to show that any errors resulting from the alleged ineffectiveness "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[16]

---

[16] *Jackson v. Epps*, 447 Fed.Appx. 535, 542 (5th Cir. 2011) ("Ineffective assistance of counsel on direct appeal can constitute 'cause' sufficient to overcome a procedural bar.")

Whitlock erroneously argues that his conviction is unconstitutional because he did not actually "touch the victim's car handle" in the attempt to steal the victim's money from her car. This argument, however, does not undermine the confidence in Whitlock's conviction because the jury was properly instructed on the elements necessary to convict Whitlock as an accomplice of his co-defendant (Trigg). Whitlock also does not dispute that he arrived at the bank with Trigg; that he waited in the same car with Trigg while parked next to the victim's car in the bank parking lot; that he fled from the scene of the crime in the same car with Trigg after the crime was committed; or that he fled when the police sought to apprehend the men shortly after the incident was reported.

The state court's procedural bar did not result in a "fundamental miscarriage of justice" and Whitlock has not satisfied the "prejudice" requirement necessary to excuse his "procedural default" on Grounds Four, Five, Six, Seven, and Eight in the instant petition. These grounds should therefore be denied pursuant to § 2254(b).

## III.   Grounds Nine and Ten should be dismissed pursuant to § 2254(d).

Grounds Nine and Ten assert claims for ineffective assistance of trial counsel (Aafram Y. Sellers) and appellate counsel (Benjamin A. Suber):

| | |
|---|---|
| <u>Ground Nine</u> | Whitlock was denied his Sixth and Fourteenth Amendment constitutional right to a fair trial and effective assistance of counsel where without objection, or proper introduction, the prosecutor was allowed to introduce, and misuse, incompetent evidence that was inherently prejudicial. |
| <u>Ground Ten</u> | Whitlock was denied his Sixth and Fourteenth Amendment rights to effective assistance of trial and appellate counsel. |

Whitlock was acting *pro se* when his ineffective assistance of trial/appellate counsel claims were raised in the state court post-conviction proceeding. In this federal *habeas corpus* petition, however, Whitlock raises additional arguments in support of his ineffective

assistance of counsel claims. Although not "fairly presented" for the state court to decide on the merits, it appears these additional ineffective assistance arguments may not be procedurally barred from review in this federal proceeding.[17]

As to the ineffective assistance claims raised in Whitlock's *pro se* motion for post-conviction relief, those claims were "adjudicated on the merits" by the Mississippi Supreme Court's order holding that "Whitlock's claims of ineffective assistance of counsel fail to meet the standard set out in *Strickland v. Washington* and are without merit."[18] This decision is therefore reviewed under § 2254(d)(1) because the right to effective counsel at trial and on appeal is "clearly established" federal law,[19] and because ineffective assistance of counsel claims involve mixed questions of law and fact.[20]

The Supreme Court, however, applies an elevated "unreasonable application" standard of review in this particular context:

> Surmounting *Strickland*'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client,

---

[17] *Martinez v. Ryan*, 132 S.Ct. 1309, 1322 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, *there was no counsel* or counsel in that proceeding was ineffective.") (emphasis added).

[18] *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 784-85 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. ... This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits."").

[19] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

[20] *Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012) ("Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1).").

with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).[21]

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Id*. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. … The likelihood of a different result must be substantial, not just conceivable." *Id*. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

In this case, the applicable standard of review does not change the outcome: that Whitlock's claims of ineffective assistance of counsel do not warrant federal habeas corpus relief. As previously explained, ample evidence was admitted at trial to support Whitlock's conviction as an accomplice for attempted auto burglary under Mississippi law. Moreover, Whitlock's trial counsel defended the case in the same manner that had resulted in two (2) previous mistrials. The difference in the third trial was the jury instruction (Number Six) on the criminal liability of an accomplice under Mississippi law. Significantly, a similar

---

[21] *Harrington v. Richter*, 131 S.Ct. 770, 787-88 (2011) (internal citations and quotations omitted)

instruction was *not* given in the two previous trials, both of which were mistrials. The prosecution pursued a different theory of criminal liability against Whitlock in his third trial and the jury was properly instructed on the controlling law. Such facts do not show a "substantial likelihood" that the result would have been different with different counsel at trial or on appeal.

Whitlock was also an unquestionably difficult client to represent. He fired three (3) different court-appointed attorneys before the start of his first trial.[22] Whitlock was represented by different counsel (Bradley M. Mills and Michael Scott) in his first trial, which resulted in a mistrial on July 19, 2007. That counsel withdrew before the start of the second trial due to a conflict of interest. Whitlock was again represented by different counsel (Darla Palmer and Aafram Y. Sellers) in his second trial, which was also declared a mistrial. Lead counsel, however, filed a motion to withdraw before the start of Whitlock's third trial, which stated in pertinent part that:

> At the Defendant's request, a plethora of Motions were argued before Honorable Chapman. Specifically, the Defendant desired that a motion be filed to have the judge removed from the case. Said motion was argued and Honorable Chapman transferred the case to Judge Richardson's docket. … Attorney Palmer must note, however, that the communications during trial between Mr. Whitlock and herself, as well as his other appointed counsel were difficult to say the least. Nonetheless, his second trial, ended in a mistrial which appeared to be a victory of sorts.

> Mr. Whitlock has written the Mississippi Bar Association on two occasions, March 15th and 27th complaining that he is tired of sitting at the jail. He contends that Attorney Palmer is not doing her job by ensuring that he receives a bond before the next trial in his matter and other allegations. He fails to acknowledge however that he has another charge in another county that has a hold on him preventing him to bond out. Attorney Palmer is not assigned to that other county and is not required to handle matters for him in that county.

> Attorney Palmer contends that she can no longer zealously represent Mr. Whitlock on any of his cases. He insists that his legal theories are correct, rather than listen

---

[22] [12-11, p.20].

to the full advice of counsel. Honorable Richardson had an opportunity to observe Mr. Whitlock's performance during trial wherein, Mr. Whitlock acted quite difficultly during the entire trial.

Attorney Palmer has recently experienced difficulties in discussing this case with Mr. Whitlock and feels quite certain that she cannot communicate effectively with him anymore regarding his legal options. Mr. Whitlock perceives most options communicated in a negative manner and contends that certain evidence reflects differently than it legally does.

[12-2, p.72].

The conduct of trial and appellate counsel in this case satisfies *Strickland*, regardless of whether reviewed under a *de novo* or a "doubly" deferential standard. A very reasonable argument exists that counsel satisfied *Strickland's* deferential standard. Accordingly, the state court's rejection of Whitlock's ineffective assistance of counsel claims was not an unreasonable application of clearly established federal law.

Moreover, Whitlock's post-conviction motion filed in state court shows why he also cannot demonstrate that a "substantial" likelihood that a different result would occur with different counsel, as required under a *de novo* review of his newly-raised arguments:

On August 5, 2005 the Pet. Was arrested for the crime of robbery, after the Pet. Had went to the bank with Mr. Gregg Trigg, at which time Gregg Trigg did try to rob Ms. Dottie Smith.

[12-11, p.18].

The jury was properly instructed on the controlling state law and the overwhelming evidence did not favor Whitlock. Whitlock aggravated the situation by constantly straining the attorney-client relationship with unnecessary tension. Communications with counsel broke down as a result. Because Whitlock cannot satisfy the *Strickland* standard under a *de novo* review, his petition does not present a "substantial" claim for ineffective assistance of counsel. *See Harrington v. Richter*, 131 S.Ct. 770, 787 (2011) ("Even under *de novo*

review, the standard for judging counsel's representation is a *most deferential one*.")
(emphasis added).

## RECOMMENDATION

Based on the above analysis, the undersigned recommends that the petition [1] for
writ of *habeas corpus* filed by Jerry Lamar Whitlock be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District
Courts for the Northern District of Mississippi and the Southern District of Mississippi*, each
party has fourteen (14) days to serve and file written objections to the Report and
Recommendation; the objections must be filed with the Clerk of this Court, and must serve
them upon the other parties and submit them to the assigned District Judge. Within seven
(7) days of service of the objection, the opposing party or parties must either serve and file a
response or notify the District Judge that they do not intent to respond to the objection. An
objecting party must specifically identify those findings, conclusions, and recommendations
to which he objects; the District Court need not consider frivolous, conclusive, or general
objections. A party who fails to file written objections to the proposed findings, conclusions,
and recommendations within fourteen days of being served a copy shall be barred, except
upon grounds of plain error, from attacking on appeal any proposed factual finding or legal
conclusion accepted by the District Court to which he did not object.

Signed, this the 26th day of January, 2015.

*s/ John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE